## AMERMAN *vs.* WILES and others.

1. Where, under a contract with a corporation, chattels are furnished, and the corporation gives a mortgage upon the chattels to secure the debt, in pretended compliance with the contract, and the mortgagees suppose it was in actual and full compliance with it, this court will not enjoin the mortgagees who have been put in rightful possession of the chattels under the mortgage from selling them, at the instance of a mere stockholder seeking to deprive the mortgagees of a lien to which they are equitably entitled, as against him, on the ground that the corporation, in executing the mortgage, acted *ultra vires.*

2. The execution of a chattel mortgage by the president and secretary of a corporation, who were at the time owners of two-thirds of its stock, and its subsequent filing in the clerk's office of the proper county, is a substantial compliance with a statute requiring, in order to the validity of a mortgage by a corporation, that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation, should be first filed in the office of the clerk of the county where the mortgaged premises are situated.

B

The bill in this cause was filed November 30th, 1872. The complainant is a stockholder of "The North River Brick and Tile Manufacturing Company," a corporation organized April 18th, 1867, under the act of the legislature of New York, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical, and chemical purposes," passed February 17th, 1848. Part of the business of the company was to be carried on in Bergen county, in this state, and part in New York. Its capital was $60,000, divided into six hundred shares of $100 each. Of these shares John V. B. Johnson, who has been president from the beginning, and Samuel D. Stryker, who has been secretary from the beginning, owned each two hundred. Its manufacturing operations were carried on in Bergen county upon a tract of twenty acres.

The bill states that on or about May 30th, 1871, a mortgage signed by Mr. Johnson, the president, and Mr. Stryker, the secretary, was made by the company on its steam engine, manufacturing machinery, and fixtures, worth about $8000, to the defendants, Alfred M. Wiles and William H. Wiles, to secure the payment of $8368.16, or thereabouts, and filed in the Bergen county clerk's office; and that the mortgagees were, at the filing of the bill, proceeding to sell the property under the mortgage. It prays an answer on oath, and an injunction restraining the defendants from selling, carrying away or in anywise interfering with the mortgaged chattels under the mortgage, and that the mortgage may be ordered to be delivered up and canceled, on the ground that the corporation, in executing it, acted *ultra vires*, and that it is therefore for want of the assent hereinafter mentioned, void. The complainant insists that by the laws of New York the company had no power to mortgage its property prior to the amendment, of April 13th, 1871, to the act under which it was organized. By that amendment it was provided that any corporation formed under the act of February 17th, 1848, or of the acts amending or extending that act, might secure the payment of any debt theretofore contracted, or

which might be contracted by it in the business for which it was incorporated, by mortgaging all or any part of its real or personal estate, and that every mortgage so made should be valid to all intents and purposes, as if executed by an individual owning such real or personal estate, provided that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation, should be first filed in the office of the clerk of the county where the mortgaged premises should be situated. The complainant insists that the assent required by this amendment was not filed, and that therefore the mortgage is of no effect. On this ground alone the prayer for relief is founded.

The injunction was granted on the filing of the bill. The defendants, who are the mortgagees, and the sheriff of Bergen, who was acting as their agent in the proposed sale under the mortgage, have answered on oath.

The cause was heard upon a motion to dissolve the injunction, upon bill and answer.

*Mr. J. Dixon,* for the motion.

*Mr. McGee,* contra.

THE CHANCELLOR.

The bill is silent as to the nature or even the existence of the indebtedness to secure the payment of which the mortgage was given. But it appears from the answer that it arose under a contract in writing, made on the 6th day of March, 1871, between the defendants Wiles and the corporation, by which the former agreed to furnish the latter with the mortgaged chattels, and put them up on the twenty-acre tract for $7000, to be secured by bond and mortgage upon that tract, and "a chattel mortgage on the articles furnished." The vendors having complied with the terms of the contract on their part, the company executed and delivered to them, in this state, the bond and mortgage of the corporation on the twenty-acre tract, according to the

agreement, to secure the payment of $7000 and interest, and the chattel mortgage in question to secure the same debt, and a further sum of $1368.16 due to them from the company on the same account, for · which the company's promissory notes were given to them. The chattel mortgage and the notes were also executed and delivered in this state. It further appears from the answer that on the 27th of May, 1872, nothing having been paid on or on account of the debt, and the notes having all matured, and the whole debt having become due, the defendants took possession of the mortgaged chattels in the presence of Johnson, the president, and with his assent, on behalf of the company, and from that time have been in possession. When stopped by injunction they had advertised the property for sale, under the mortgage.

On the argument, the defendants' counsel insisted that if the corporation had no power under the laws of New York to give the chattel mortgage, it is valid nevertheless, because having been made by a foreign corporation in this state, upon property in this state, its validity depends, not on the law of New York, but on that of New Jersey—the *lex loci contractus;* and that, admitting that the law of New York is to govern, the mortgage is valid, because the proviso of the amendment was substantially complied with in the execution of the instrument by Johnson and Stryker, who then owned two-thirds of the stock.

I deem it unnecessary to pass upon the first of these questions. It satisfactorily appears that the mortgaged chattels are the same which were furnished under the contract. By the terms of that contract the vendors were entitled to a mortgage upon the property to secure the purchase money. The company executed a mortgage in pretended compliance with the agreement. The vendors supposed it was in actual and full compliance. It was drawn and its execution superintended by a counselor-at-law of Jersey City, acting for both parties in the matter. It is fair to presume that the company intended to give a valid mortgage, and supposed

they had done so.   There is nothing in the case to show the contrary, and if there were, there would be all the more reason for this court declining to aid them in consummating what, under those circumstances, would be a fraud.   It is scarcely necessary to remark that this lien is one which this court, on application, would aid in enforcing, compelling the company to do or submit to equity in the premises.

In *Shakel* v. *Duke of Marlborough,* 4 *Madd.* 463, there had been an advance of money on an agreement to execute a mortgage to secure its repayment.   The borrower had failed to perform his agreement, and there was an arrear of interest due on the money advanced.   The court, on bill for specific performance, appointed a receiver.

The complainant has no equity against the vendors in this suit.   He sets up none.   He neither questions their debt nor their conduct, nor their right to their lien, except as he calls in question the validity of the mortgage for want of the certificate of assent.   For the purposes of this suit, at least, it may well be held that the execution of the mortgage by officers who were at the time owners of two-thirds of the stock rendered such filing unnecessary, and was a substantial compliance with the statute.   The vendors were entitled to a mortgage such as they understood that which was given to them to be.   They obtained lawful possession under their mortgage after they had become by its terms and the terms of their contract entitled to it.   They held it at the time of filing the bill, and had held it for some months.   The complainant is merely a stockholder, seeking to deprive them of a lien to which they are equitably entitled as against him. They being in possession of the mortgaged property, and being equitably entitled to the lien they assert, this court will not lend its aid to the complainant in his attempt to deprive them of it.

The injunction is dissolved, with costs.